UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR A. SMALL,

      Petitioner,

v.

PAUL CHAPPIUS, *Superintendent, Elmira Correctional Facility,*

      Respondent.[1]

No. 12-CV-5583 (KMK) (JCM)

ORDER ADOPTING REPORT & RECOMMENDATION

KENNETH M. KARAS, District Judge:

On July 13, 2012, Arthur A. Small ("Petitioner"), proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28. U.S.C. § 2254, challenging his conviction for assault in the second degree and criminal possession of a weapon in the third degree (the "Petition"). (*See* Pet. for Writ of Habeas Corpus (Dkt. No. 1).) In a Report and Recommendation ("R&R") dated September 8, 2016, Magistrate Judge Judith C. McCarthy ("Judge McCarthy") recommended that the Petition be denied. (*See* Report & Recommendation ("R&R") (Dkt. No. 76).)[2] On September 20, 2016, Respondent filed objections to the R&R. (*See* Objs. to R&R ("Resp't's Objs.") (Dkt. No. 77).) Petitioner filed his objections to the R&R in documents dated September 21, 2016, (*see* Pet'r's Objs. to R&R ("Pet'r's Objs. I") (Dkt. No. 78); Pet'r's Additional Objs. to

---

[1] As noted in the Report & Recommendation, in naming Janet DiForieo as Respondent, "the Court presumes Petitioner means Janet DiFiore, the former Westchester County District Attorney." (R&R 1 n.1.) The proper Respondent in this Action is Paul Chappius, the Superintendent of Elmira Correctional Facility where Petitioner is currently incarcerated. The Court will treat the Action as properly asserted against Respondent Chappius.

[2] This case was originally referred to Magistrate Judge George A. Yanthis on September 20, 2012. (*See* Dkt. No. 14.) It was redesignated to Judge McCarthy on May 7, 2014. (*See* Dkt. No. 57.)

R&R ("Pet'r's Objs. II") (Dkt. No. 79).). For the reasons to follow, the Court adopts Judge McCarthy's R&R in its entirety and denies the Petition.

## I. Factual Background & Procedural History

The factual and procedural background of this case is set forth in Judge McCarthy's R&R and the Court assumes the Parties' familiarity therewith. (*See* R&R 1–18.) The Court nevertheless summarizes the facts relevant to this Order.

On November 28, 2008, Petitioner was at 44 South Bleaker Street, Apartment 1-A in Mount Vernon, New York along with his mother Mary Brown ("Brown"), his brother Nelson Small ("Nelson") and Nelson's fiancée, Isabel Carreras ("Carreras"). (*See id.* at 2.) Petitioner's older brother David Small ("David") returned to the apartment to find Brown yelling at Petitioner to "stop making noise, turn down the music, and go to sleep." (*Id.*) Petitioner called Brown a "bitch" and David told Petitioner to "respect their mother" and "stop drinking." (*Id.* (internal quotation marks omitted).) In response, Petitioner told David to "shut the fuck up" and said that "if [he] said another word, [Petitioner would] kill [him]." (*Id.* (internal quotation marks omitted).) When David told Petitioner to "get [his] coat" and repeated that he needed to respect their mother, Petitioner repeated his threat to kill David and began chasing him with a kitchen knife. (*Id.* (internal quotation marks omitted).) When David and Petitioner were near the front door of the apartment building, Petitioner stabbed David in the chest. (*See id.*) David was "gushing blood" and Petitioner pushed the door to the building open, causing David to fall down the concrete stairs onto a landing. (*Id.* (internal quotation marks omitted).) Petitioner jumped to the landing and continued to swing at David, until David grabbed Petitioner and held him against a pole. (*See id.* 2–3.) David then lost consciousness and fell backwards down a second flight of stairs. (*See id.* at 3.) Upon regaining consciousness, David threw garbage cans at Petitioner

2

while running into the street. (*See id.*) Petitioner chased after David, who called to Nelson, alerting him that "[Petitioner] just stabbed [him]." (*Id.* (internal quotation marks omitted).) Carreras awoke during the commotion and upon hearing that David had been stabbed by Petitioner, yelled to Nelson and Brown to call an ambulance. (*See id.*)

Petitioner, still holding the knife, then returned to the stairs of the apartment, approached Carreras, and asked for a cigarette. (*See id.*) Petitioner "put the knife in his pocket, wiped the blood off his face, and licked his hand." (*Id.*) When Carreras asked Petitioner what happened, he replied that he was "just tired of that mother fucker." (*Id.* (internal quotation marks omitted).)

At approximately 3:45 A.M., Detective Roberto Boncardo ("Boncardo") arrived at the apartment and spoke to Carreras. (*See id.*) Boncardo and Carreras searched the area for Petitioner, but were unsuccessful in locating him. (*See id.*) Carreras then went to police headquarters to give a formal statement. (*See id.*) Boncardo and Carreras returned to the area around the apartment and continued to search for Petitioner, whom they located at approximately 5:30 A.M. (*See id.*) Boncardo called for backup, drew his weapon, and ordered Petitioner to raise his hands in the air. (*See id.* at 3–4.) Petitioner took a black knit cap and a knife out of his coat and "tossed them into a green garbage receptacle." (*Id.* at 4.) Petitioner was arrested and Boncardo recovered the cap and knife. (*See id.*) Petitioner was brought to Mount Vernon police headquarters and provided police with a written statement, waiving his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and stating that he stabbed David in self-defense, (*see id.*).

On November 28, 2008, Petitioner was arraigned in City Court, City of Mount Vernon, and charged with assault in the first degree and criminal possession of a weapon in the third degree. (*See id.*) On December 17, 2008, Petitioner appeared with counsel for a felony hearing,

3

and on May 7, 2009, evidence was presented to a grand jury. (*See id.* at 4–5.)³ Petitioner was charged with attempted murder in the second degree, assault in the second degree, criminal possession of a weapon in the third degree, and menacing in the second degree. (*See id.* at 5.)

Petitioner made several pre-trial motions, and following pre-trial hearings, (*see id.* at 5–9), trial was held from January 25 through February 3, 2010, (*see id.* at 9). On February 3, 2010, the jury acquitted Petitioner of the charge of attempted murder in the second degree but convicted him of assault in the second degree and criminal possession of a weapon in the third degree. (*See id.*) The charge of menacing was previously withdrawn during trial. (*See id.* at 9 n.17.) On July 21, 2010, Petitioner was sentenced to a term of 17 years to life for the crime of assault in the second degree, to run concurrently with a term of three-and-one-half years to seven years for the crime of criminal possession of a weapon in the third degree. (*See id.* at 11.)

Petitioner, by his counsel Gerald Zuckerman, Esq., appealed his conviction to the Supreme Court of the State of New York, Appellate Division. (*See id.* at 12.) On January 10, 2012, the Appellate Division affirmed Petitioner's conviction. *See People v. Small*, 935 N.Y.S.2d 892, 893 (App. Div. 2012). In papers dated February 7, 2012, Petitioner, proceeding pro se, filed an application for leave to appeal his conviction to the New York Court of Appeals. (*See* R&R 12.) Mr. Zuckerman subsequently completed Petitioner's application by letter dated February 16, 2012, stating that "the grounds for appeal [we]re essentially that the verdict was against the weight of the evidence produced at trial." (*Id.* (internal quotation marks omitted).)⁴

---

³ Between December 17, 2008 and May 7, 2009, several conferences were held which "failed to result in a superior court information." (R&R 5.)

⁴ Petitioner filed an additional pro se application for leave to appeal dated February 23, 2012, but ultimately declared his intention to proceed with Mr. Zuckerman's application. (*See* R&R 12–13.)

4

On April 5, 2012, the Court of Appeals denied Petitioner's leave application. *See People v. Small*, 968 N.E.2d 1009 (N.Y. 2012).

In papers dated January 26, 2012, Petitioner filed pro se motions to vacate the judgment against him and to set aside his sentence pursuant to New York Criminal Procedure Law ("C.P.L.") §§ 440.10 and 440.20, respectively. (*See* R&R 13.) Petitioner subsequently filed a second § 440.10 motion, dated April 17, 2012. (*See id.* at 15.) The Court of Appeals denied both motions on July 2, 2012. (*See id.* at 16.) Petitioner did not seek leave to appeal these denials. (*See id.* at 17.)

Petitioner filed the instant Petition on July 13, 2012, (*see* Dkt. No. 1), and an amended petition on December 20, 2015, which Magistrate Judge George A. Yanthis ("Judge Yanthis") rejected as improperly filed, (*see* Dkt. No. 35). Judge Yanthis granted Petitioner leave to file a motion to amend, (*see id.*), and Petitioner filed a motion to amend, dated January 26, 2013, (*see* Dkt. No. 36). Judge Yanthis denied the motion to amend on February 21, 2013. (*See* Dkt. No. 38.) Respondent filed an opposition to the Petition on December 31, 2012. (*See* Dkt. Nos. 21–22.) Petitioner made various subsequent filings, (*see* Dkt. Nos. 39–51), but did not file a reply before the January 30, 2013 deadline, (*see* Dkt.).

## II. Discussion

### A. Standard of Review

#### 1. Review of a Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

5

recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), (D), or (F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

"A district court evaluating a magistrate judge's report may adopt those portions of the report [and recommendation] to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). However, where a party timely objects to a report and recommendation, as Petitioner has done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "When a [petitioner] simply rehashes the same arguments set forth in [his] original petition, however, such objections do not suffice to invoke de novo review of the [r]eport." *Aponte v. Cunningham*, No. 08-CV-6748, 2011 WL 1432037, at *1 (S.D.N.Y. Apr. 11, 2011) (italics omitted); *see also Hall v. Herbert*, Nos. 02-CV-2299, 02-CV-2300, 2004 WL 287115, at *1 (S.D.N.Y. Feb. 11, 2004) ("[T]o the extent that a party simply reiterates his original arguments, the [c]ourt reviews the report and recommendation only for clear error.").

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his

pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam) (italics and internal quotation marks omitted).

### 2. Habeas Corpus Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was

7

unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) (per curiam) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we .... must defer to the determination made by the state court ...." (citation omitted)).

Under AEDPA, the factual findings of state courts are "presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). A petitioner can rebut this presumption only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

8

### B. Petitioner's Objections

#### 1. Requests for Trial Transcripts

In a document dated September 21, 2016 and filed with the Court on September 27, 2016, Petitioner stated that there was "no real reason for Judge[] Judith C. McCarthy to decide a placement report [and] recommendation on [his] habeas corpus without a[] reply of the Court[']s denial . . . of transcripts [of Petitioner's 2001 trial]." (Pet'r's Objs. I, at 2.) While this objection is far from clear, the Court liberally construes it to raise an objection to the Court's denial of Petitioner's request for copies of his trial transcripts.

In a document labeled "Ex[h]ibit A" and dated September 21, 2016, Petitioner states that "there was no given respect to [the Court's] order to give transcripts to [P]etitioner September 8, 2012." (*See* Pet'r's Objs. II, at 2.) The Court assumes that Petitioner is referring to an Order To Answer, dated September 18, 2012, in which the Court instructed Respondent to "file and serve an answer and the transcripts and briefs identified in Rule 5 of the Rules Governing § 2254 Cases in the United States District Court within sixty (60) days of the date of this Order." (*See* Dkt. No. 13.)

On February 6, 2013, Petitioner filed a motion requesting, among other things, that Respondent produce the trial and sentencing transcripts. (*See* Dkt. No. 36.) On February 21, 2013, the Court denied the motion. (*See* Dkt. No. 38 ("To the extent that [P]etitioner seeks free transcripts of his criminal trial and a DNA report, he has not made any showing whatsoever as to why he would be entitled to such.").) On February 13, 2014, Petitioner sent a letter to the Court requesting state court transcripts, (*see* Dkt. No. 53), and the Court denied the request, (*see* Dkt. No. 55). On May 15, 2014, Petitioner filed a "Notice of Motion to Proceed as a Poor Person Upon Appeal & to Furnish a Stenographic Transcript Without Fee," again requesting the

9

transcripts in his state action. (Dkt. No. 58). In an Order dated September 15, 2014, Judge McCarthy denied Petitioner's request for the transcripts. (*See* Dkt. No. 62.) In a letter to the Court, dated November 6, 2014, Petitioner requested transcripts for a fourth time. (*See* Dkt. No. 63).) In an Order dated December 19, 2014, the Court found that Petitioner had not demonstrated a need for the transcripts and again denied the request. (*See* Dkt. No. 65.) As Petitioner's requests for the transcripts from his trial and sentencing in state court have been repeatedly considered and denied, this Court rejects Petitioner's objection to Judge McCarthy's R&R on this basis.

### 2. Additional Objections

The remainder of Petitioner's objections are extremely difficult to follow and the Court agrees with Judge McCarthy that is it "often left guessing as to what Petitioner perceives to aggrieve him" with respect to the R&R. (R&R 26 (internal quotation marks omitted).) Indeed, Petitioner's objections appear to be a response to Respondent's objections, and not the R&R. (*See* Pet'r's Objs. II, at 1 ("On . . . September 20, 2016, James A. McCarty . . . responded [with] objection[s] to [the] Report and Recommendation."); *id.* at 4 (requesting "feed[]back in trying to explain [Petitioner's] actions on the objection of . . . James A. McCarty['s] request to den[y] [his] habe[a]s corpus").) Petitioner's "submission[s] to the [C]ourt do[] not in fact amount to an objection of any kind, much less a specific objection to a particular portion of [the] Report and Recommendation." *Thomas v. Yelich*, No. 09-CV-5039, 2012 WL 5904359, at *2 (E.D.N.Y. Nov. 26, 2012). Petitioner makes little mention of the R&R, other than to say that he "received [it]," (*see* Pet'r's Objs. I, at 1), and that "there was no real reason for Judge[] Judith C. McCarthy to decide a placement Report [and] Recommendation" in light of the denial of Petitioner's request for his trial transcripts, (*id.* at 2).

10

Aware of its obligation to construe Petitioner's submissions liberally, *see Triestman*, 470 F.3d at 474, to the extent the Court can discern objections from Petitioner's filings, Petitioner appears to take issue with Judge McCarthy's findings regarding the weight of the evidence, (*see* Pet'r's Objs. II, at 1 ("[Petitioner has] corresponded to [sic] [the Court] thr[ough] the years . . . to try . . . to rearra[]nge the truth in the sight of the highly p[ie]rs of Magistrate thr[ough] lack of evidence.")), his "ineffective counsel," (*id.* at 1–2), and the "Grand Juror[]s adding []counts for conviction," (*id.* at 2). Each of these issues was either addressed in the R&R or raised on direct appeal in Petitioner's state court proceedings, (*see* R&R 29 ("A weight of the evidence argument is a state law claim . . . that is not cognizable on federal habeas review."); *id.* at 41–42 (finding "Petitioner arguably complains of ineffective assistance of counsel," but holding "[t]hese vague and conclusory allegations are not sufficient to warrant federal habeas relief" and "Petitioner does not articulate the factual basis underlying his claims"); *id.* at 14 (noting that in his first § 440.10 motion, Petitioner raised issue of "the fact that [he] was arraigned on a first degree assault charge but indicted on the different charges of second degree assault, attempted murder in the second degree and criminal possession of a weapon in the third degree")), however, the Court cannot determine the specific objections Petitioner is raising with respect to Judge McCarthy's findings on these issues. "In cases where . . . only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, [a] court reviews the findings and recommendations of the magistrate judge for clear error." *Depronio v. Colvin*, No. 15-CV-231, 2016 WL 4508357, at *1 (N.D.N.Y. Aug. 29, 2016). The Court has reviewed the R&R and, finding no error in connections with these issues, clear or otherwise, dismisses Petitioner's objections.

### 3. Respondent's Objections

Petitioner's C.P.L. § 440 motions raised a claim that his trial counsel was ineffective; the state court found that such claims were procedurally barred and should have been raised on direct appeal. (*See* R&R 16.) Petitioner failed to seek leave to appeal to the Appellate Division. (*See id.* at 17.) Respondent's single objection is to Judge McCarthy's recommendation "that this Court not deem [the issue of ineffective assistance of trial counsel] unexhausted, procedurally barred or denied on independent and adequate state grounds." (Resp't's Objs. 1.)

"[I]n addressing a habeas petition, a federal court must not 'review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Henry v. Conway*, No. 04-CV-4298, 2005 WL 1861738, at *2 (E.D.N.Y. Aug. 3, 2005) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) ("Federal habeas review is prohibited if a state court rests its judgment on an adequate and independent state ground." (internal quotation marks omitted)). Failure to comply with state procedural requirements, including the failure to raise an issue on direct appeal, constitutes a valid independent and adequate state ground. *See Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that the failure to raise an issue on appeal constitutes an adequate state procedural bar to a federal habeas petition); *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (holding where a petitioner "waived the [habeas] claim under § 440.10(2)(c) . . . [the] claim [was] procedurally defaulted for the purposes of federal habeas review as well"); *Edwards v. Marshall*, 589 F. Supp. 2d 276, 285 (S.D.N.Y. 2008) ("Where a petitioner fails to comply with state procedural rules, his claim is procedurally defaulted and is not cognizable on habeas review."). Judge McCarthy and Respondent agree that C.P.L. § 440.10(2)(c) is an independent

and adequate state ground upon which courts have precluded habeas review. (*See* R&R 39; Resp't's Objs. 2.)

Petitioner's 30-day deadline to seek leave to appeal from the denial of his C.P.L. § 440.10 motion has long since passed. *See* C.P.L. § 460.10(4)(2) ("Within [30] days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application . . . for a certificate granting leave to appeal to the intermediate appellate court."). Petitioner has not alleged "improper conduct, inability to communicate, or other facts essential to support the motion" to extend the time limit, *see id.* § 460.30(a), and therefore, Petitioner would be barred from raising such claims, *see People v. Ferraro*, 564 N.Y.S.2d 479, 480 (App. Div. 1991) ("Since the defendant failed to timely move for leave to appeal from the order denying his postjudgment motion pursuant to [C.P.L. §] 440.10 to vacate the judgment, his appeal from the order is dismissed."). "For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation marks omitted). "In such a case, a petitioner no longer has remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Consequently, certain courts have held that "such procedurally barred claims are deemed exhausted." *Santos v Rock*, No. 10-CV-2896, 2011 WL 3449595, at *7 (S.D.N.Y. Aug. 5, 2011) (internal quotation marks omitted), *adopted by* 2011 WL 4000896 (S.D.N.Y. Sept. 7, 2011).

"[T]he application of this rule in cases where the petitioner failed to appeal the denial of his C.P.L. § 440.10 motion has not been entirely consistent." *Id.* at *7. In *Pesina v. Johnson*, the Second Circuit held that the expiration of the statute of limitations for applications for leave to

appeal imposed by C.P.L. § 460.10(4)(a) did not constitute exhaustion of the claim in the state courts:

> While that statutory limit may ultimately be held by state courts to preclude them from reaching the merits of [a petitioner's] ineffective assistance claim, [the petitioner] must still present that claim to the highest state court. We have no authority to declare as a matter of state law that an appeal from the denial of his original [§] 440.10 motion is unavailable.

913 F.2d 53, 54 (2d Cir. 1990) (per curiam).

The Second Circuit has not disavowed this aspect of *Pesina*, and as the R&R indicates, this Court has had occasion to revisit the *Pesina* rule, and has declined to stray from its ruling, despite the admitted uncertainty of its continued viability. *See Quintana v. McCoy*, No. 03-CV-5754, 2006 WL 300470, at *5 (S.D.N.Y. Feb. 6, 2006) ("While *Pesina* may well be on shaky ground, it cannot be nullified by this Court."); *Shomo v. Maher*, No. 04-CV-4149, 2005 WL 743156, at *7 (S.D.N.Y. March 31, 2005) (stating the "demise [of *Pesina*] cannot be declared by this Court"). As Respondent ultimately agrees that "Judge McCarthy correctly recommended that the instant [P]etition for writ of habeas corpus be denied in its entirety," the Court adopts the R&R in full. (Resp't's Objs. 1 (italics omitted).)

### III. Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise. The Court therefore adopts Judge McCarthy's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be

taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, close the case.

SO ORDERED.

DATED: September 26, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE